IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRENT ROGERS D/B/A,      §
I-NET SPIN.COM           §
                         §
        Plaintiff,       §
                         §
v.                       §        CIVIL ACTION NO. H-10-3741
                         §
THE BETTER BUSINESS BUREAU §
OF METROPOLITAN HOUSTON, INC., §
                         §
        Defendant.       §

## MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion for Partial Summary Judgment (Doc. 69). The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **DENIES** Defendant's motion.

### I.  Case Background

Plaintiff filed this copyright action against Defendant alleging that, after terminating a Web Design Agreement with Plaintiff, Defendant directed the intentional, unauthorized copying of content from approximately 2,600 webpages[2] created by Plaintiff.

### A.  Factual Background

On December 24, 2001, Defendant, a Texas non-profit organization "committed to promoting ethical business practices in

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docs. 39, 42.

[2]    Stylistically, the court prefers the lowercase, single-word format of terms such as "webpage" and "website."  The court does not alter the format of those terms in quotations.

the local business community,"[3] contracted with Plaintiff to create webpages for Defendant's member businesses.[4]  Plaintiff agreed to create individual webpages for the member businesses, to create a website at the uniform resource locator ("URL") reliabilitymall.com[5] for hosting the webpages, to license the URL to Defendant, and to maintain the URL and webpages.[6]  In exchange, Defendant agreed to pay Plaintiff a creation fee per webpage and a renewal and maintenance fee for each of Defendant's members that had a webpage and renewed their organizational membership.[7] Defendant passed on the expense of the creation and maintenance of the webpages to the individual member businesses.[8]

Plaintiff's contract term ran for one year, after which it automatically renewed on a month-to-month basis.[9]  Either party had the right to terminate the contract by giving thirty days' notice

---

[3]     Doc. 15, Def.'s Mot. to Dismiss, p. 2.

[4]     See Doc. 69-3, Ex. A to Def.'s Mot. for Partial Summ. J., Web Design Agreement.

[5]     The parties variously refer to the website as reliabilitymall.com and ReliabilityMall.com.  Compare, e.g., Doc. 69-3, Ex. A to Def.'s Mot. for Partial Summ. J., Web Design Agreement with Doc. 69-4, Ex. D to Def.'s Mot. for Partial Summ. J., Application for Supplementary Registration.  Except when quoting, the court uses the former.

[6]     Doc. 69-3, Ex. A to Def.'s Mot. for Partial Summ. J., Web Design Agreement, pp. 1-2 (unnumbered).

[7]     Id. at p. 1 (unnumbered).

[8]     See id.

[9]     Id.

2

to the other.[10]   On March 18, 2009, Defendant provided Plaintiff notice of termination of the Web Design Agreement.[11]

In early 2010, Plaintiff applied for a certificate of copyright registration for www.reliabilitymall.com as an unpublished, nondramatic literary work, which was issued on January 31, 2010.[12]

**B.   Procedural Background**

Plaintiff filed this lawsuit in October 2010, alleging copyright infringement, violations of the Digital Millennium Copyright Act,[13] and, in the alternative, unfair competition under federal law.[14]   Shortly thereafter, Defendant filed a motion to dismiss, in part challenging Plaintiff's copyright protection for the individual webpages.[15]   Plaintiff opposed the motion.[16]

Two days later, Plaintiff applied to the Copyright Office for supplementary registration of the webpages.[17]   Plaintiff explained

---

[10]      Id.

[11]      See Doc. 69-2, Ex. B to Def.'s Mot. for Partial Summ. J., Letter from Dan Parsons to Plaintiff Dated Mar. 18, 2009.

[12]      Doc. Doc. 69-3, Ex. C to Def.'s Mot. for Partial Summ. J., , Certificate of Registration (bearing the Copyright designation "TXu" in the registration number, indicating that the work was registered as an unpublished, nondramatic literary work).

[13]      17 U.S.C. §§ 1201-1322.

[14]      See Doc. 1, Pl.'s Original Compl.

[15]      See Doc. 15, Def.'s Mot. to Dismiss, pp. 9-12.

[16]      See Doc. 16, Pl.'s Resp. to Def.'s Mot. to Dismiss.

[17]      See Doc. 69-4, Ex. D to Def.'s Mot. for Partial Summ. J., Application for Supplementary Registration.

3

that he sought supplementary registration to add the words "Web Page Collection" to the title of the work and to add information about the nature of authorship and the registration of the collection as unpublished.[18]  He provided the following additional information about the publication status of the webpage collection:

> Claimant created the registered Web pages between 2001-2009 to be displayed online. Each of Claimant's Web pages has a unique "Reliabilitymall.com" URL and was created independently for companies and individuals. Each Web page, or "site," was displayed on the www.ReliabilityMall.com [website] for one year in exchange for an annual licensing fee.
>
> Claimant registers its collection of Web pages as unpublished in light of the legislative history of the 1976 Copyright Act. See H.R.Rep. No. 94-1476 at 53 ("on the other hand, the definition of 'fixation' would exclude from the concept purely evanescent of transient reproduction such as those projected briefly on a screen, shown electronically on a television or other cathode ray tube, or captured momentarily in the 'memory' of a computer), 64 ("the definition [of publication]… makes plain that any form or dissemination in which a material object does not change hands-performance or displays on television, for example-is not a publication no matter how many people are exposed to the work.")(1976); Moberg v. 33T, 666 F.Supp.2d 415, 422 (Del. 2009)("the question of whether an Internet posting constitutes publication under U.S. law and the Berne Convention remains unresolved."). Claimant also adds that the Better Business Bureau of Metropolitan Houston, Inc. acted as an "administration liaison" between the Claimant and the companies or individuals. There was not, however, a 'group' of wholesalers or distributors. Rather, the registered Web pages relate only to members of the Houston branch of the Better Business Bureau.[19]

Upon review of Plaintiff's application, the Copyright Office issued

---

[18]    Id. at p. 1.

[19]    Id. at Separate Continuation Sheet.

a certificate of supplementary registration.[20]

Plaintiff amended in February 2011 and dropped the unfair competition claim.  In the present motion, Defendant seeks summary judgment on Plaintiff's copyright infringement claims.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex

---

[20]     Id. at Certificate of Supplementary Registration.

<u>Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial.  See <u>Celotex Corp.</u>, 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

### III. Analysis

Defendant requests summary judgment on Plaintiff's copyright infringement cause of action, arguing that "Plaintiff's works are not registered" because Plaintiff represented to the Register of Copyrights that the websites were unpublished.[21]  Plaintiff argues in response, in addition to his assertion that the websites were unpublished, that Defendant's challenge should be considered pursuant to the instructions in 17 U.S.C. § ("Section") 411(b), which applies to certificates that contain "inaccurate

---

[21]    Doc. 69, Def.'s Mot. for Partial Summ. J., p. 1.

information."

## A. A Certificate of Registration Raises a Presumption of Copyright Validity

In order to succeed on a copyright infringement action, a plaintiff must prove ownership of a valid copyright, actionable copying, and substantial similarity. Armour v. Knowles, 512 F.3d 147, 152 (5th Cir. 2007). Ownership of a valid copyright encompasses originality, copyrightability, and compliance with statutory formalities. Compaq Computer Corp. v. Ergonome Inc., 387 F.3d 403, 407-08 (5th Cir. 2004). Before a plaintiff may bring a civil action for copyright infringement, he must register the copyright with the U.S. Copyright Office ("Copyright Office"). 17 U.S.C. § 411(a).

The Copyright Act requires that courts recognize a timely obtained certificate of copyright registration as "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); see also Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004); Lenert v. Duck Head Apparel Co., No. 95-31122, 99 F.3d 1136, 1996 WL 595691, at *3 (5th Cir. Sept. 25, 1996)(unpublished); Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995); Lakedreams v. Taylor, 932 F.2d 1103, 1108 n.10 (5th Cir. 1991). Even if the certificate contains "any inaccurate information," it satisfies the registration requirement, unless the applicant included the information with knowledge that it was inaccurate and the Register

7

of Copyrights would have refused registration had she known of the inaccuracy.  17 U.S.C. § 411(b).  Section 411(b), which was added in October 2008, also instructs courts to refer any case in which such inaccurate information is alleged to the Register of Copyrights for advice as to whether the information would have caused the refusal of registration.  Id.

The presumption of validity afforded a registrant is not irrebuttable, but it shifts the burden to the defendant to prove invalidity.  Lenert, 1996 WL 595691, at *3; Norma Ribbon & Trimming, Inc., 51 F.3d at 47 (citing Lakedreams, 932 F.2d at 1108 n.10); Entm't Research v. Genesis Creative Group, 122 F.3d 1211, 1217 (9th Cir. 1997); Masquerade Novelty, Inc. v. Unique Indus., 912 F.2d 663, 668 (3d Cir. 1990).  "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright."  Id. at 668.

Fraud on the Copyright Office has long been held as a basis for invalidating a registered copyright.  See One Treasure Ltd., Inc. v. Richardson, 202 Fed. App'x 658, 660, 661 (5th Cir. 2006)(unpublished)(noting that "[i]mmaterial, inadvertent errors in an application for copyright registration do not jeopardize the registration[']s validity" but, on the other hand, intent to defraud the Copyright Office might); Masquerade Novelty, Inc., 912 F.2d at 667 (holding that knowing misrepresentations that might have led the Register of Copyrights to reject an application were

grounds for invalidating a copyright). <u>Whimsicality, Inc. v. Rubie's Costume Co.</u>, 891 F.2d 452, 455 (2$^d$ Cir. 1989)(noting that the presumption would fall to "proof of deliberate misrepresentation"); <u>Robison v. Cardiology Assocs., L.L.C.</u>, Civil Action No. 05-1581, 2008 WL 294488, at *9 (W.D. La. Feb. 1, 2008)(stating that a defendant must prove fraud to overcome the presumption of validity and that the burden is heavy).  In this regard, Section 411(b) appears to be a codification of the approach employed by the Fifth Circuit and other courts.  <u>See</u> 2-7 <u>Nimmer on Copyright</u>, § 7.20 (stating that the statutory amendment "is well in line with the construction of the [Copyright] Act prior to this amendment").

Fraud is not the only basis for invalidating a registered copyright.  <u>See</u> <u>Masquerade Novelty, Inc.</u>, 912 F.2d at 668-69. "Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality." <u>Id.</u>; <u>see also</u> <u>Norma Ribbon & Trimming, Inc.</u>, 51 F.3d at 47 (finding that the evidence showed the copyrighted works "already existed in the public domain" and, thus, the copyrights were invalid); <u>R. Ready Prods., Inc. v. Cantrell</u>, 85 F. Supp.2d 672, 682 (S.D. Tex. 2000)(noting that a defendant must offer proof that the work was copied from other works to successfully challenge the originality

of a registered work).  Copyrightability and compliance with statutory formalities also may be challenged and, if shown to be lacking, can serve as bases for invalidating a registered copyright.  Cf. Masquerade Novelty, Inc., 912 F.2d at 669 (stating that a defendant need not introduce evidence to challenge copyrightability "but instead must show that the Copyright Office erroneously applied the copyright laws" in the registration process).

**B.   Defendant Failed to Overcome the Presumption of Copyright Validity Accompanying Plaintiff's Certificate of Registration**

In this case, the Copyright Office issued Plaintiff a registration certificate effective February 1, 2010, for "www.reliabilitymall.com," an unpublished, nondramatic literary work.  In December 2012, Plaintiff sought and was granted supplementary copyright registration for the unpublished "www.reliabilitymall.com Web Page Collection."[22]  Accordingly, Plaintiff possesses a certificate of registration for an unpublished collection of webpages constituting the reliabilitymall.com website.  The registration certificate constitutes prima facie evidence of copyright validity.

Although Defendant incorrectly asserts that "Plaintiff's works are not registered," the main thrust of Defendant's motion is its

---

[22]   Doc. 69-4, Ex. D to Def.'s Mot. for Partial Summ. J., Certificate of Supplementary Registration.

contention that "Plaintiff's registration is invalid."[23]  Defendant
points to the registration precondition for filing suit but ignores
Plaintiff's compliance with this requirement.  Defendant also fails
to mention its own burden to overcome the presumption of validity
that accompanies a registration certificate.  Instead, Defendant
simply argues that Plaintiff "improperly registered [his] publicly
available  websites  as  unpublished  works,[24]  rendering  the
registration invalid."[25]  Defendant contends that Plaintiff made a
"legal error regarding the entire basis for [his] application."[26]

Defendant specifically distinguishes its legal-error argument
from an allegation that the registration application contained
inaccurate information that would subject it to Section 411(b) and
a referral to the Register of Copyrights for review.  On that
point, the court agrees with Defendant.  Plaintiff's supplementary

---

[23]     Doc. 69, Def.'s Mot. for Partial Summ. J.

[24]     A collection is eligible for registration as a single work if it
complies with the prescribed conditions set out in 37 C.F.R. § 202.3(b)(4).  With
regard to unpublished collections, the regulation states:

(I)  For the purpose of registration on a single application and
upon payment of a single registration fee, the following shall be
considered a single work:

. . . .

(B)  In the case of unpublished works: all copyrightable
elements that are otherwise recognizable as self-contained
works, and are combined in a single unpublished "collection."

[25]     Doc. 80, Def.'s Reply in Support of its Mot. for Partial Summ. J.,
p. 4.

[26]     Doc. 87, Def.'s Supplemental Reply in Support of its Mot. for Partial
Summ. J., p. 2.

application[27] did not contain erroneous facts or lack material information.   Plaintiff notified the Copyright Office that he individually created webpages for Defendant's member businesses, gave each a unique reliabilitymall.com uniform URL, posted each on the www.reliabilitymall.com website, and received an annual licensing fee for each.   Thus, the issue here is not a Section 411(b) matter of inaccurate information in the application.[28]

Defendant does not allege fraudulent intent, much less point to any such evidence.   Defendant argues that the relevant law, when applied to Plaintiff's websites results in a finding that the

---

[27]   Supplementary Copyright Registration is appropriate to correct or to amplify information in an earlier registration. 37 C.F.R. § 201.5; see also 17 U.S.C. § 408(d); Compendium II:  Copyright Office Practices, § 624.01(f); Copyright Office, Circular 8: Supplementary Copyright Registration, p. 1 (2011)(available at www.copyrightcompendium.com).   Amplification includes "[e]xplanations that clarify information given in the basic registration." Copyright Office, Circular 8: Supplementary Copyright Registration, p. 2 (2011). The Copyright Office, after review of the application for supplementary registration, will assign a new registration number and will issue a certificate of supplementary registration. See Copyright Office, Circular 8: Supplementary Copyright Registration, p. 2 (2011).  The supplementary registration does not supersede but, rather, augments the original registration.  17 U.S.C. § 408(d); see also L.A. Printex Indus. v. Aeropostale, Inc., 676 F.3d 841, 853 (9th Cir. 2012).

[28]   Even if Defendant had alleged that identifying the websites as unpublished was a matter of inaccurate information, rather than a legal error, the court would find no need to request the advice of the Register of Copyrights as to whether knowledge of that information would have caused her to refuse registration because the Copyright Office issued a supplementary registration after reviewing all of the underlying facts necessary to the determination. See L.A. Printex Indus., 676 F.3d at 853 ("[The Copyright Offices's] decision to [issue a certificate of supplementary registration] after it was told of the . . . prior publication shows that the error was not one that 'if known, would have caused the Register of Copyrights to refuse registration'")(quoting 17 U.S.C. § 411(b)(1)(B)); Interplan Architects, Inc. v. C.L. Thomas, Inc., Civil Action No. 4:08-cv-03181, 2010 WL 4366990, at *28 (S.D. Tex. Oct. 27, 2010)("The Copyright Office's decision to issue a certificate of registration . . . once it became aware that preexisting material did exist shows that the Copyright Office would not have rejected the copyright registration applications if this information had been known to them at the time of Plaintiff's initial copyright application.").

websites were published.  Defendant points to two facts as material, either one of which Defendant argues is a sufficient basis for finding publication:  1) Plaintiff uploaded the webpages to the internet at reliabilitymall.com; and 2) Plaintiff "sold and/or licensed" the webpages to Defendant (and its members).[29]

### 1. Uploading webpages to the internet does not constitute publication as a matter of copyright law

Although it does not define "published," the Copyright Act defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101.  The statutory definition offers further guidance: "The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.  A public performance or display of a work does not of itself constitute publication." Id.  Neither the Copyright Act nor its implementing regulations[30] explain the application of this definition to internet works.  See Copyright Office, Circular 66: Copyright Registration for Online Works, p. 3 (2009) (stating that the definition of "publication" under

---

[29]     Doc. 69, Def.'s Mot. for Partial Summ. J., p. 9.

[30]     Oddly enough, 37 C.F.R. § 202.3, which details the copyright registration parameters and application process, adopts for that regulation an exclusive list of terms from the definitional provision of the Copyright Act that does not include the term "publication."  See 37 C.F.R. § 202.3(a)(2).  The court is unsure of the meaning of the omission and finds no legal authority suggesting that "published" under 37 C.F.R. § 202.3(b)(4) has a meaning unrelated to that of "publication" under the Copyright Act.

copyright law "does not specifically address online
transmission").[31]

Defendant presents an appealing argument in favor of finding
that Plaintiff published his websites by uploading them to the
internet.  And a variety of cases grappling with the issue tend to
support Defendant's position.  But two legal constructs stand in
the way of summary judgment on the validity of Plaintiff's
copyright, the prima facie presumption and deference to the
Copyright Office.

The court first surveys case law that addresses whether a work
on the internet has been published.  The parties directed the court
to no case law within the Fifth Circuit that directly addressed
this issue, and the court found none.  The only cases that are
similar enough to be helpful were heard in district courts in other
circuits.

In Getaped.com, Inc. v. Cangemi, 188 F. Supp.2d 398, 402
(S.D.N.Y. 2002), the district judge found that a website, similar
to photographs, music files, or software, was published when posted
on the internet.  The court stated:

> By accessing a webpage, the user not only views the page
> but can also view--and copy--the code used to create it.
> In other words, merely by accessing a webpage, an
> Internet user acquires the ability to make a copy of that
> webpage, a copy that is, in fact, indistinguishable in
> every part from the original.  Consequently, when a

---

[31]   The Copyright Office's circulars are available online at
http://www.copyright.gov/circs.

> website goes live, the creator loses the ability to
> control either duplication or further distribution of his
> or her work.

Id.[32]

A 2006 opinion out of the same court stated that, assuming that the internet posting of a digital file of a show performance constituted distribution, it lacked the element of commercial exploitation required for publication. Einhorn v. Mergatroyd Prods., 426 F. Supp.2d 189, 197 (S.D.N.Y. 2006). In a more recent opinion, the same district court stated that posting images on a website was not publication. McLaren v. Chico's FAS, Inc., No. 10 Civ. 2481(JSR), 2010 WL 4615772, at *1 (S.D.N.Y. Nov. 9, 2010)(unpublished). In 2009, another district court avoided the issue, finding it to be "unsettled" and unnecessary to that court's ruling. Moberg v. 33T LLC, 666 F. Supp.2d 415, 422 (D. Del. 2009).

The Northern District of California made a passing remark in a case dealing with the jurisdictional effect of application for registration that reflects the view that making a website available to the public on the internet was publishing it. See Sleep Science Partners v. Lieberman, No. 09-04200 CW, 2010 WL 1881770, at *6 (N.D. Cal. May 10, 2010)(unpublished). The Southern District of

---

[32] The Getaped.com, Inc. case has received a lot of attention, not all of which has been favorable. For example, one group of scholars stated, "The holding in Getaped is difficult to reconcile with the principle that a public display of a work is not a publication and may be an example of bad facts making bad law." Bruce P. Keller, et al., Copyright Law A Practitioner's Guide, § 6:1.2 n.94 (2010). They emphasized that publication under the Copyright Act occurs, not when a work is publically viewable, but when the work is "reproduced in multiple copies that in turn are sold or offered for sale to the public." Id. at § 6:1.2.

Florida determined that the creator of a music file published the file when he posted it on the internet because it could be downloaded and copied by members of the public. See <u>Kernal Records Oy v. Mosley</u>,794 F. Supp.2d 1355, 1364 (S.D. Fla. 2011). Citing <u>Getaped.com, Inc.</u>, the Eastern District of Arkansas found that photographs that were accessible online to others who could download them freely were published. <u>William Wade Waller Co. v. Nexstar Broad., Inc.</u>, No. 4-10-CV-00764 GTE, 2011 WL 2648584, at *2 (E.D. Ark. July 6, 2011). Without discussion or explanation, another district court stated that the defendant "published a You-Tube video of a musical work." <u>Erickson v. Blake</u>, 839 F. Supp.2d 1132, 1134 (D. Or. 2012).

Although the current trend appears to favor finding works posted on the internet to be published, the reasons for finding publication varies from case to case and is fact dependent. <u>See, e.g.</u>, <u>Kernal Records Oy</u>, 794 F. Supp.2d at 1364 n.7 (suggesting that the court's decision hinged on the particular facts before it); Thomas F. Cotter, <u>Toward a Functional Definition of Publication in Copyright Law</u>, 92 Minn. L. Rev. 1724, 1768-70 (2008)(opining that whether an internet transmission is a publication depends on whether the facts indicate that the website users were authorized to make copies, i.e., whether a distribution occurred). Absent binding law or even a clear consensus in case law directly related to the posting of a website online, the court

16

is not inclined to negate the presumption of validity by finding, as a matter of law, that Plaintiff distributed copies of the websites when he uploaded them to the internet.

Perhaps because the courts are not unified on the issue and neither the Copyright Act nor the regulations have addressed internet works, the Copyright Office continues its "long-standing practice" to "ask[] the applicant, who knows the facts surrounding distribution of copies of a work, to determine whether the work is published or not." Copyright Office, <u>Circular 66: Copyright Registration for Online Works</u>, p. 3; see also <u>Compendium II: Copyright Office Practices</u>, § 904(1) (stating that the Copyright Office usually does not attempt to decide whether publication has occurred, leaving the decision to the applicant). On the other hand, the Copyright Office will not register the work as unpublished if the supporting statement of facts clearly shows that publication has occurred. <u>Compendium II: Copyright Office Practices</u>, § 904(5).[33]

The Copyright Office's "policy statements, agency manuals, and enforcement guidelines" do not carry "the force of law," but they are entitled to some deference given the "specialized experience and broader investigations and information" of the agency. <u>See Clackamas Gastroenterology Assocs., P.C. v. Wells</u>, 538 U.S. 440,

---

[33]    The Copyright Office's Compendium II is available online at www.copyrightcompendium.com.

449 n.9 (2003)(quoting <u>Christensen v. Harris Cnty.</u>, 529 U.S. 576, 587 (2000))(referring to the Equal Employment Opportunity Commission's Compliance Manual); <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944)(finding an agency administrator's rulings to "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." One of the Copyright Office's "primary responsibilities is to examine applications to register copyright claims to determine whether they satisfy the requirements of the copyright law." <u>Olem Shoe Corp. v. Wash. Shoe Co.</u>, Case No. 1:09-cv-23494 (S.D. Fla. Oct. 14, 2010), Doc. 209, Resp. of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2). Based on this expertise in interpreting and applying the registration requirements, the court finds that the Copyright Office's decision to issue Plaintiff a supplemental registration certificate for an unpublished collection to be persuasive.[34]

### 2. One nonbinding, distinguishable opinion on license provides insufficient legal support to override the presumption of validity under these circumstances

The definition of "publication," as discussed above, includes public distribution of copies of a work only in cases of "sale or other transfer of ownership, or by rental, lease, or lending." 17

---

[34]    A determination that a live website is necessarily published would have wide-ranging effects on the rights of authors and users, including copyright duration, country of publication, time limits, deposit requirements with the Library of Congress, and fair use. <u>See</u> Cotter, <u>supra</u>, at 1728-51, 1788.

U.S.C. § 101.  This includes the offer to distribute copies to a group for further distribution.  Id.

Relying on a district court case out of Southern District of New York, Defendant argues that Plaintiff "sold and/or licensed" the webpages to Defendant and its members.  In McLaren, the case cited by Defendant, the plaintiff received a copyright registration certificate for a published collection of mannequin designs. McLaren, 2010 WL 4615772, at *1.  In her application, the plaintiff represented that she had created and first published the collection in 2000.  Id.  She conceded before the court, however, that she had published certain ones of the collection design illustrations prior to publication of the collection as a whole.  See id. at *2.  Two years prior to publishing the collection, the plaintiff had licensed some of the collection designs to a mannequin manufacturer, including the design allegedly infringed.  Id. at **1, 2.  The plaintiff argued that prior publication of certain of the designs did not preclude the entire collection from qualifying as a single work.  Id. at *2.

The court agreed with the defendant that "[t]he most natural reading of the regulation's requirement that the copyrightable works form a 'single unit of publication' is that the works must be first published together to qualify as such."  Although there appeared to be no debate whether the plaintiff had previously published a portion of the designs in the collection, the court

19

noted that a prior licensing agreement covering certain designs, from which the licensee produced and sold mannequins, amounted to publication of those designs. Id. at *3.

McLaren carries little weight with this court because its focus is on the second part of the publication definition, regarding the transfer of ownership or the renting, leasing, or lending of a work, not on the public distribution aspect. This case differs from McLaren, because Plaintiff did not license the websites to Defendant so that it could produce and sell them. In McLaren, there was no question as to distribution to the public.[35] According to the definition of "publication," the sale, rental, lease, or lending of a work would not suffice without the actual distribution of copies to the public. See 17 U.S.C. § 101.

Accordingly, the court finds that regardless of the licensing arrangement between Plaintiff and Defendant, the court cannot hold, as a matter of law, that the webpages were published unless public distribution occurred. The court's finding with regard to Defendant's failure to prove as a matter of law that posting the webpages on the reliabilitymall.com website constituted a distribution at all, rendering the issue of selling or licensing immaterial.

Defendant has not shown as a matter of law that Plaintiff's

---

[35]    As mentioned in the prior section of this opinion, the court notes again that the McLaren court flatly held that posting the images on a website "would not in any event suffice to plead 'publication.'" See McLaren, 2010 WL 4615772, at *4.

characterization of the website collection as unpublished was an error.   Defendant has failed to meet its burden to rebut the presumption of validity as to Plaintiff's copyright.

### IV.  Conclusion

Based on the foregoing, the court **DENIES** Defendant's Motion for Partial Summary Judgment.

**SIGNED** in Houston, Texas, this <u>15th</u> day of August, 2011.

Nancy K. Johnson
United States Magistrate Judge

21